Lisa Hay, OSB #980628
Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
lisa_hay@fd.org

Attorney for Petitioners

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **JOHN PHILIP STIRLING,**<br><br>**Petitioner,**<br><br>**v.**<br>**DEWAYNE HENDRIX, Warden, FCI Sheridan,**<br><br>**Respondent.** | **Case No. 3:20-cv-00712-SB**<br><br>**EMERGENCY MOTION FOR APPOINTMENT OF A SPECIAL MASTER TO ADDRESS ALLEGATIONS OF RETALIATORY ACTION AGAINST SHERIDAN RESIDENTS AND FOR A TEMPORARY RESTRAINING ORDER BARRING RETALIATORY ADVERSE ACTIONS AND PRESERVING EVIDENCE** |

The petitioners, through counsel, respectfully move this Court for an emergency order appointing a special master empowered to gather facts, including by taking protected statements from residents of FCI Sheridan and reviewing government writings, and to provide the Court with recommendations addressing 1) whether adverse actions are being taken by BOP employees against complaining residents of FCI Sheridan and, 2) if so, what potential orders should be entered

to protect FCI Sheridan residents from the appearance and reality of retaliation for exercise of First Amendment rights to speech and to access to the courts regarding their conditions of confinement. Because the FCI Sheridan residents are facing irreparable harm, the petitioners also request that the Court enter a temporary restraining order barring retaliatory adverse actions, along with an order to preserve evidence. The motion is made on an emergency basis in order to provide immediate relief, to preserve evidence, and to deter any future misconduct.

**A. The Petitioners Have Provided Statements Establishing A Prima Facie Case For Retaliatory Adverse Action In Violation Of The First Amendment.**

This motion is based on Exhibit A comprised of redacted emails and communications from clients and attorneys received by the Federal Public Defender for the District of Oregon documenting a sudden upsurge of aggressive actions by BOP employees against residents of FCI Sheridan. The actions appear to be accompanied by statements indicating BOP employees' animus based on exercise of First Amendment rights. Previously, the petitioners and other FCI Sheridan residents acting as witnesses have provided information to the Court in support of habeas corpus petitions and other civil actions. The FCI Sheridan residents have rights to provide the Court with evidence under the First Amendment's protection of speech and access to the courts. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *United States v. Fowlkes*, 770 F.3d 748, 755-56 (9th Cir. 2014) (quoting *Turner v. Safley*, 482 U.S. 78, 95 (1987)).

Although the government has authority to maintain prison discipline, under the First Amendment, BOP employees' practices must comport with an "'important or substantial governmental interest unrelated to the suppression of expression' and 'the limitation of First Amendment freedoms no greater than is necessary or essential to the protection of the particular

governmental interest involved.'" *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (quoting *Procunier v. Martinez*, 416 U.S. 396, 413-414 (1974)). Prisoners have a "constitutional right to petition the government for the redress of grievances[.]" *Turner*, 482 U.S. at 84; *accord Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013). Further, the right of witnesses "to be protected against lawless violence does not depend upon any of the amendments to the constitution, but arises out of the creation and establishment by the constitution itself of a national government, paramount and supreme within its sphere of action." *In re Quarles*, 158 U.S. 532, 536 (1895).

The "reality and substance of any of a prisoner's rights are only as strong as his ability to seek relief from the courts or otherwise to petition the government for redress." *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). Activities that hinder an "honest, unabashed airing of a grievance" burden that right. *Id*. The petitioners and supporting witnesses who have provided the Court information in the course of seeking legal redress for government wrongdoing should receive strong protection under due process and First Amendment principles. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).

The declaration provides alarming evidence that a contingent of BOP employees were brought to FCI Sheridan from out of the District and have taken it upon themselves to inflict summary punishment against FCI residents in retaliation for complaints about conditions and the lawsuits. For example, in a very short period of time, the Federal Public Defender has received remarkably similar reports of retaliatory violence against the person and property of FCI Sheridan residents:

- We were extracted the other day by SORT teams from across the nation and told that "we did this" and "this is your own damn fault". So we are being RETALIATED against for filing this petition against the prison for mistreatment and excessive lockdowns? … They were slamming old men into walls and choking them out because they cant move very fast. This is an outrage.

- I'm convinced that this action was done entirely in retaliation for the 2241 habeas corpus filing that has been organized by the office of the Federal Public Defenders and Lisa Hay. Several officers have made statements to me personally, as well as to other inmates, that this is true, and have said that they are going to file because it isn't right. … [The outside officers] began systematically opening cells and pulling people out, they would tell you to back out of your cell with your hands on your head, and when you reached the opening, several men would seize you at once, pull you aside, and slam you against the wall, and jam their elbow into your back, pushing you against the wall, screaming threats into your ear. I heard "PUT YOUR FUCKING HANDS UP". Several times I heard "PUT YOUR HANDS UP OR I'LL FUCKING KILL YOU". … Well, the cops just came in and systematically beat the shit out of every inmate in the institution because of that lawsuit. They knew it, the cops working here know it, and every inmate damn sure knows now it too…

- when they came in thay said you YOU GOT THIS COMING..so its retalation...and i dont know what we did wrong we dont fight we dont make drama..ya their is those people filing paper work becuase of medical and counselors not doing FSA credits properly,,but as a whole we dont do s%$t except let them walk all over us..we dont even complain about being locked down all the time for 2+years..pleae forward this to the lawyer ….. the new COS are trying to fight all of us..saying lets go i wish you would you look big try me..pressing on us..all the time getting in our faces for no reason and they are leaving in a week and some new guy is going to take their place and try to 1 up the last guy..and its all reatalation...whan is going to stop...ask the lawyer to please help us...we are all struggling

- hey i just wanted to informe you of the stuff that happend to us on july 25th this monday they called in a bunch of c/o s from another institution that were called in to mess everything up and serch our cells but while they were here they assaulted a bunch of people through us out side cussed us out and tossed our belongings in the trash we cant get back ,that was shoes ,food radio, pictures, laundary, exc. its really odd because the c/o s here cant even control them and they dissrespect them as well they dont have name tags and they take people out of the cameras view so they can ruff you up.

- They shook down unit 2A last week, I could see through the window them bringing out some black man unconscious cuffed and strapped face-down to a

stretcher, I was probably 75 feet away and I could see blood dripping from the stretcher. They removed several other inmates in handcuffs, those who "bucked" (i.e. stood up for themselves in any way, asked for respect, "talked back"). One inmate, [name redacted], told them "get the f#$k off of me", and I watched, helplessly through my window, as the 5 police picked him up, 4 feet in the air, and slammed him into the ground. I heard the smack as he hit the ground over all the bustle in the unit. I watched the cops get on top of him, and saw their arms cocking back as they punched him over and over and over. They realized that they wanted to beat him worse than they already had. So they took him into the shower by the ice-room and beat him, I could hear his screams from across the unit.

- The last 2 weeks they have been doing a institutional shake down with a specials team from people from other prisons. These same guys have shook down every unit. They aren't wearing any face coverings potentially continuing the spread of Covid-19. This specials team has also been randomly harassing inmates to provoke into assault.

- as of Monday the 25 of july guards entered fci sherdan and began to strip search our rooms and take our personal property,we were fed sack lunches for 3 days no hot meals, and our linen was taken away numerous inmates were assaulted by these gaurds and as of today i have gone 3 days with no linen i have had to sleep in my sweats an jacket to keep warm.

- They had a shake down yesterday and throw all my personal property away, I lost over 400 dollars worth of my property.

- I WOULD LIKE TO INFORM YOU THAT F.C.I SHERIDAN HAD THIS BIG SERCH OF THE UNITS,YARD ECT.THEY CAME THROUGH AND TOOK ALOT OF EVERYONES PERSONAL PROPERTY AND THROUG IT OUT.I LOST EVERYTHING MISS HAY.ALL MY LEAGAL WORK,PERSONAL PICTUERS,RADIO.THEY JUST DESTOED MY CELL AND MIXED ALL OF OUR STUFF TOGETHER,MY CELL MATE.THROUGH US UP ON THE WALL.

- not feeling well they threw out all my meds in the raid and everyone lost so much stuff, thye threw away my books and most of my commisary and personal items...its terrible whats goin on

- The level of disregard and the dehumanization that these officers in FCI Sheridan imposes on me and I am sure other inmates is becoming overwhelming! And yet we are left to sit and wonder what is next! I never been so depressed in my life and I feel this trauma caused here will forever leave a scar on me!

Attorneys with clients at FCI Sheridan have also called or emailed the Federal Public Defender's office to report their clients' claims of retaliation for the lawsuit and for raising issues regarding their treatment. One attorney reported his client's statement that guards were "retaliating against people who complain and frequently mention the lawsuit. He said they are being unusually cruel."

This Court's authority to adjudicate this case depends on the unconstrained access to information from the petitioners regarding the manner in which residents of FCI Sheridan are being treated. The communications received by the Federal Public Defender's office provide an immediate basis for this Court's investigatory and remedial action.

**B. This Court Has Authority To Enter An Immediate Order Naming A Special Master To Gather Information From FCI Sheridan Residents And To Provide Protection Of A Temporary Restraining Order In The Interim.**

The alarming reports from FCI Sheridan call for the Court to take three immediate actions: 1) appoint a special master empowered to gather information from FCI Sheridan residents and from government writings; 2) enter a temporary restraining order barring retaliatory adverse actions for exercise of protected rights; and 3) issue a preservation order to the respondents to preserve and produce to the special master all communications and writings of BOP staff, including text messages and emails, related to the deployment of out-of-district personnel and mentioning in any way complaints and litigation by prisoners. The special master is needed to be sure the Court has reliable information upon which to base its decision whether, upon entry of the temporary restraining order, to convert the temporary restraining order into a preliminary injunction.

**Special Master**. The Court has authority to appoint a special master under Federal Rule of Civil Procedure 53(a)(C) to assist in pretrial fact-gathering. This mechanism may be implemented

in the context of prison litigation to resolve disputed factual conflicts and to gather information relevant to resolving legal issues. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 514-16 (2011) (noting decades of fact-gathering work by special master); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010) (noting "role of special master" is envisaged by Rule 53); *United States v. Carter*, 429 F. Supp. 3d 788, 868 (D. Kan. 2019) (appointing special master to investigate facts concerning scope of intercepted attorney-client communications in order to protect Sixth Amendment rights of prisoners), *order vacated in part on other grounds*, 2020 WL 430739 (D. Kan. Jan. 28, 2020). Because the Prison Litigation Reform Act (PLRA) does not apply to habeas proceedings, the restrictions on special masters in that statute, by definition, do not apply to this case. 18 U.S.C. § 3626(f), (g) (defining use of special masters in any "civil action with respect to prison conditions" which do not "include habeas corpus proceedings challenging the fact or duration of confinement in prison").

Magistrate Judges maybe appointed as special masters. Fed.R.Civ.P 53(h). Appointment of a federal magistrate judge as a master in this case may be appropriate in light of the immediate need to gather facts. The special master should be authorized to conduct interviews with FCI Sheridan residents pursuant to an order explicitly protecting them from BOP adverse actions, and to gather BOP writings related to the recent allegations by prisoners, including any writing, physical or electronic, that relates to the recent deployment of out-of-District correctional personnel and any reference to litigation, grievances, and any other form of complaint regarding conditions at FCI Sheridan.

**Temporary Restraining Order**. In deciding whether to grant a temporary restraining order, the courts "look to substantially the same factors that apply to a court's decision on whether

to issue a preliminary injunction." *Innovation L. Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). "A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest." *Id*. (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). Where the hardship tips sharply toward the plaintiffs, relief is appropriate: "[A] temporary restraining order or a preliminary injunction may be granted 'if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest.'" *Id*. (quoting *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012)).

Here, the irreparable harm is palpable: FCI residents are fearful and traumatized by actions of their custodians that endanger their persons and property. The language of retaliation that accompanies the rough treatment of residents has an immediate chilling effect on the exercise of First Amendment rights. The law prohibiting retaliatory actions is clear, making it likely that the plaintiffs would succeed on the merits of a protective injunction: "[B]ecause purely retaliatory actions taken against a prisoner for having exercised [First Amendment] rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68. The collected statements of FCI residents easily meet each of these conditions for establishing a prima facie case of unlawful retaliation.

**C. The Scope Of The Temporary Restraining Order Should Include Protection Against Retaliation As Well As Preservation Of Evidence For The Special Master's Use.**

The most urgent need for a temporary restraining order is to address and to forestall any further actions that contribute to the appearance and reality of retaliation for FCI Sheridan residents' exercise of First Amendment rights. The entry of an order narrowly framed to adverse actions resulting from protected conduct will both 1) provide FCI Sheridan residents assurance that the Court monitors litigation to ensure it can go forward without retaliation, and 2) deter any government actors who would otherwise be willing to express disapproval of litigation and complaints through violence to persons and property.

The temporary restraining order should also preserve evidence. Although parties are under a duty to preserve all evidence they know is "potentially relevant to the litigation," *Leon v. IDX Sys. Corp*., 464 F.3d 951, 959 (9th Cir. 2006), the very nature of the claims here raise concerns that relevant evidence will not be faithfully preserved. Any memoranda, directives, instructions, and other writings, including communications among BOP personnel regarding retaliation for the lawsuit or for raising claims, may be easily lost, especially if these are in the form of text messages. *See, e.g.,* The Washington Post, *Secret Service Erased Texts From Jan. 5 and 6, 2021, Official Says* (July 15, 2022), available at https://www.washingtonpost.com/national-security/2022/07/14/secret-service-texts-erased (last accessed July 31, 2022 at 9:29 a.m.). To the extent BOP staff possess bags of confiscated property from residents, those may be destroyed if no preservation order is issued. The petitioners therefore move for an order preserving evidence

until the special master can collect facts regarding whether a retaliatory animus in response to exercise of First Amendment rights motivated the recent searches and confiscation of property.

In reviewing a motion to preserve evidence, the court engages in a balancing test of several factors. *Marti v. Rosario*, No. 2:20-CV-00897-CKD P, 2021 WL 3167325, at *1–2 (E.D. Cal. June 7, 2021). These factors include: 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved. *Id.* In this case, the declaration in Exhibit A provides significant grounds for concern that evidence will not be preserved without an order, and that petitioners will be irreparably harmed by the loss of evidence. There is no reason to believe that BOP staff could not maintain possession of confiscated materials, and further direct the preservation of BOP staff communications from the previous 60 days regarding the lawsuit, complaints by prisoners, and the role of the out-of-district staff in relation to those subjects.

**Conclusion**

For the foregoing reasons, the plaintiffs respectfully request that the Court enter an order forthwith appointing a special master authorized to take protected statements from residents of FCI Sheridan and to provide the Court with recommendations addressing 1) whether adverse actions are being taken by BOP employees against complaining residents of FCI Sheridan, and 2) if so, what potential orders should be entered to protect FCI Sheridan residents from the appearance and reality of retaliation for exercise of First Amendment rights to speech and to access to the courts

regarding their conditions of confinement. The Court should also enter a temporary restraining order barring BOP employees from engaging in adverse actions against FCI Sheridan residents for exercise of First Amendment rights to make complaints, to act as witnesses, and to access the courts, and should further order the preservation of evidence relating to this matter.

Respectfully submitted on July 31, 2022.

*/s/ Lisa Hay*
Lisa Hay
Attorney for Petitioners